The opinion of the court was delivered by
DeBlanc, J.
Born in slavery, Henry Pearce remained a slave until the general emancipation which followed the war. In 1855, he and one Charlotte, who — as himself — was then a slave, were — with the consent of their masters and in presence of a large assemblage — married by a minister of the Gospel of their class, and lived as man and wife, and so acknowledged by all who knew them, until the death of Henry Pearce, in 1875.
They had nine children, eight of whom are under age. Those children were always recognized and treated by them as the issue of their marriage, and — by the death of their father, they and their mother have been loft in necessitous circumstances. They have no means, no property. These facts are admitted.
It is also admitted that Pearce and Charlotte were not married otherwise than as heroin stated : that neither of them could read or write, and they did not — by notarial act — confirm their marriage and acknowledge their children.
Considering their penniless condition, the administrator of Pearce’s succession has allowed them the sum of one thousand dollars, and classed them in his account as privileged creditors for that sum. That proposed allowance is opposed by Silbernagel & Co, on the grounds :
1. That — when they married — Pearce and Charlotte were slaves, and that their marriage neither could nor did produce any of the civil effects which result from such a contract.
2. That they did not — in accordance with the Statute of the 5th of November 1868 — ratify any private marriage which may have existed between them before their emancipation, and did not legitimate the children born of their cohabitation.
Two of the provisions of the act of 1868, referred to in the opposition, are in these words :
Sec. 1. That all private or religious marriages contracted in th’s State at any time previous to the passage of this Act, shall be deemed *1169 valid and binding and as having the same force and effect as if said marriages had been contracted with all the formalities and forms prescribed by the laws then existing; provided, that at any time within two years from the date of this Act the parties having contracted such private or religious marriages shall by authentic act before a duly commissioned Notary Public, if they reside in the State, or before a competent officer if they reside in another State, or a United States Embassador, Charge d’Affaires or Consul or Yice-Oonsul, if they reside in a foreign country, make a declaration of their marriage, the date on which it was contracted, the names, sex and ages of the children born of such marriages, acknowledging said children as their legitimate offspring, and in accepting the benefit of this Act, bind and obligate themselves to perform all the duties and to assume all the obligations imposed by existing laws in relation to civil marriages, and to abide by same,” etc.
Section 5. “ That any parties who at any time previous to the passage of this act have lived together as man and wife and who desire to contract a legal marriage shall be entitled to the benefit of the provisions of this law, and the issue of such cohabitation shall be thereby legitimatized upon the parties complying with the foregoing requirements,” etc.
It is urged that these legislative enactments amount to a declaration that such a marriage as that of Pearce and Charlotte was null and void, and that they prescribed the formalities which were to be complied with to impart to it a legal existence, a now contested validity.
Here, the law sanctions the marriage, when the parties were willing, able to and did contract pursuant to the forms and solemnities which it prescribes. To those who had so contracted — whites or blacks, freemen or slaves, and by whatever name their marriage may be called, whether public, private or religious — the law of 1868 was entirely useless. It could neither add to or detract from an already existing validity.
It is objected that the marriage of Pearce and Charlotte was celebrated by one who had not been authorized by a license to celebrate it. Our Code does not declare null a marriage not preceded by a license —6 La R. 470 — and, as to those who were our slaves, their own consent and that of their masters were alone sufficient to give to their marriage an undeniable validity, one which produced no effect as long as they were held in bondage, but which — from their emancipation — has secured for them and their posterity the rights and privileges bestowed by the State on a marriage authorized and sanctioned by its laws, on the birth of children legitimated by that marriage.
Nearly sixty years ago, this court said: “It is clear that slaves have no legal capacity to assent to any contract. With the consent of their masters, they may marry, and their moral power to agree to such a contract or connection as that of marriage, can not be doubted: *1170 but, whilst in a-state of slavery, it cannot produce any civil effect, ■'because slaves are deprived of all civil rights. Emancipation gives to the slave his civil rights, and a contract of marriage, legal and valid by •the consent of the master and moral assent of the slave, from the moment of freedom — although dormant during slavery — produces all •the effects which result from such a contract among free persons.” •
Girod vs. Lewis, 6. M. R. 560.
From the parties’ admissions, Charlotte was legally married to Pearce, 'lived with him and as his wife until his death, had nine children whom he recognized as his, by whom he was recognized as a father, and — under no precept of either law or justice — can she now be considered as a concubine and her children as bastards : she is the widow and they are the heirs of Henry Pearce. That — as such — they are entitled to the amount allowed them by the administrator and the lower court, there can be no •reasonable doubt.
From the judgment of the lower court Silbernagel & Co alone have appealed. Of the several grounds of opposition urged in their pleadings, only one is now insisted on, and that one we have decided.
It is, therefore, ordered, adjudged and decreed that the judgment • appealed from is affirmed with costs.